Our next case on the call of the docket is 111-896, Agenda Number 4, People v. Chapman. Counsel for the appellant. Thank you, Your Honor. May it please the Court, I'm Robert S. Burke with the Office of the State Appellate Defender. I represent Robert J. Chapman, the defendant appellant. I'm asking this Court to reverse his conviction and send him back for a new trial. This case involves the death of his girlfriend, Cassandra Frazier. A year and four months before her death, he was charged with and convicted of domestic battery against Ms. Frazier. At the trial in this case, he presented jury instructions for three different defenses, self-defense, sudden and intense passion, which makes it secondary murder, and provocation with unreasonable belief in self-defense, which makes it secondary murder. This case involves the interpretation of a statute, 725-5-125, well, it's in my brief, Your Honor. But it's the interpretation of that statute that this appeal is about. Subsection B of that statute says that if the defendant has previously been convicted of certain crimes set forth in Subsection A, then evidence that he's been convicted of those crimes, one of those crimes, can be admitted in evidence against him at the trial for one of the crimes set forth in Subsection A. I might also mention that Subsection C goes on to say the judge should weigh the probative value against prejudicial effect and consider such things as proximity in time and the factual similarity. The crimes set forth in Subsection A are domestic battery, aggravated battery against a family or household member, stalking, aggravated stalking, and violation of an order of protection. There's only one thing that those five crimes have in common. The only thing those five crimes have in common is they're all from Article 12 of the criminal code. Also, what does any of these types of offenses, what does that language in that portion of the statute mean if we're limited to the delineated crimes? Well, Your Honor, I believe that, for instance, now there's a crime, aggravated domestic battery. And I believe that when they say these types of offenses, well, aggravated domestic battery is certainly like domestic battery and aggravated battery against a family member. Another example. Well, let's just talk about first-degree murder then, right? Okay. Is that, under your example that you just gave, is that like the offense of aggravated battery of a household member except that the ultimate harm to the victim here was greater, resulting in death instead of great bodily harm? I don't believe so, Your Honor. I know that's how the trial judge viewed it, and that's how the appellate court viewed it. Well, what's the difference between that analysis and the analysis that you just gave us? Well, first of all, murder is not in Article 12. It's in Article 9. All the crimes listed are in Article 12. But then secondly, it's one of degree. First-degree murder is the most serious crime that we have, the most serious crime for which one can be placed on trial. Even if admission of the evidence was improper, could it not be considered harmless error? I don't believe so in this case, Your Honor. And the reason for that is if it were just a defense of self-defense, maybe, if it were just a defense of provocation and unreasonable belief in self-defense. The number of wounds received by each of the parties, how does that play into that? Your Honor, I'm not saying that there's not a tremendous amount of evidence against my client, but it was a jury question, and the jury question on that, on the third defense, was whether it was sudden and intense passion, and the stabbing began while he was asleep. Now, maybe, and we don't argue that he wasn't proved guilty beyond a reasonable doubt, but beyond a reasonable doubt and whether there's harmless error to different questions. Counsel, I believe you take the position that the statute is unambiguous. That's correct, Your Honor. So we don't need to look to legislative history or any of the other tools of statutory interpretation. You think it means clearly on its face what you said. Yes, Your Honor, I think it has to be read in context, but reading something in context, I don't think there's a rule of statutory construction. I believe that the intent of the legislature, if we get into that, is that they did not want to have to amend this statute in the future if they had a crime like cyber-stalking, and plus I think they wanted to foreclose any technical defenses if there was a crime like cyber-stalking, and the defendant in that case said, hold it, cyber-stalking is not stalking. That shouldn't come in. Well, I think the statute forecloses that defense. I think that's why it was worded like that. Your Honors, murders are not listed in the statute. The domestic battery should not have been admitted in this case under that statute. It should not have been admitted as other crimes evidence to impeach the defendant. He didn't testify. It should not have been admitted as. Let's follow through on that question. Why is it not admissible to, relevant to his state of mind? I mean, that's another theory for why it was admissible, correct? Yes, and that's the theory that the state first put forth in their motion to have it admitted, but they did not put that theory forth in the argument at the beginning of the jury trial. I think it's page 134 in the record. In front of the jury in an argument or to the court? No, to the court after voir dire, but before the case was actually called before the jury. Was that clear to the jury? Was the instruction clear to the jury as to how they should use this testimony, impeachment versus substantive evidence? Well, it was not limited to impeachment. It was not limited to intent. It was not limited to motive. It was not limited to anything. Or substantive evidence. So, again, my question is why was it, would it be error for the trial court to admit this evidence to rebut his argument as to sudden passion in his state of mind? Why is it admissible for that purpose? I don't believe that it's admissible for that purpose. I think that if the State had wanted to, they could have asked it to be admitted for that purpose. But then I think they would have had to have given a limiting instruction. The jury can consider it in terms of this instead of the jury can consider it for anything. Was there any request for any kind of instruction by the defense as to how the jury should analyze this evidence one way or another, substantive evidence or impeachment? No, Your Honor. The defense said that evidence should not come in. The jury should not be instructed on that. And when it came in, however, the defense did not ask for an instruction one way or another. That's correct, Your Honor. But I don't believe that they abandoned the issue. I think that if they had thought that it should have come in with some other instruction, then they should have tendered that instruction. But here the view was there should be no instruction. And how can you tender no instruction? They objected, and that was as much as they could do. The State does argue that there would be an anomalous result if this prior domestic battery conviction could be entered in this case or a similar case if the charge were domestic battery and the victim didn't die. If there were a prosecution under that scenario and then later the victim died, would that not be an anomalous result that in the domestic battery charge you could put in the greater evidence but you couldn't do it in a murder trial? I don't think that that's anomalous, Your Honor. And I'll give you another example. Let's say that he or a woman, she gives her husband a beating and he dies from it. Well, then she or if it's the other way around, he can be charged with domestic battery and with murder. He can be charged with both. If you go to trial, I think that the State can ask for that evidence of a prior domestic battery be admitted because he's charged with domestic battery here and then it's given a limited instruction. Jurors, you can only consider it for the purpose of this domestic battery charge. You cannot consider it for the purposes of the murder charge. Now, that's slicing it pretty fine, but that's how I read the statute. Are there other questions, Your Honor? We're asking this Court to reverse and remand for a new trial. Thank you. Thank you. Counsel for the apple leave. May it please the Court, I'm Assistant Attorney General Eric Levin on behalf of the people. The judgments below should be affirmed for three independent reasons, two of which have already been addressed this morning, one of which that hasn't. I'd like to briefly outline each of those and then I'll discuss each one in turn. The first reason to affirm the lower court's judgment is that a prior domestic battery conviction is admissible in a subsequent murder prosecution where the murder arises out of an incident of domestic violence under Section 115-20. The second reason is that even if such a prior domestic battery conviction is not admissible under Section 115-20, it is admissible and would be admissible at a retrial here under the newly enacted statute of Section 115-7.4. And finally, even if defendant's prior domestic battery conviction was not admissible under either statute here, for propensity purposes, that error was harmless. Unless the Court has another preference, I'd like to begin by addressing the argument that hasn't yet been addressed this morning, namely Section 115-7.4, because I think that might be the easiest way for the Court to dispose of this case. As I read the defendant's briefs, I don't read him as contesting the fact that under the terms of Section 115-7.4, his prior domestic battery conviction is admissible at this murder trial. The only argument I read him to be making is that Section 115-7.4 cannot be applied to his case retroactively. The retroactivity analysis, however, has two parts. The first question is whether or not the General Assembly intended for the statute to have retroactive effect, and then the second question is whether, if they did so intend, whether constitutionally the statute can be applied retroactively. Under the intent prong, this Court's cases are clear that whereas here there's no express indication in the statute from the legislature as to the temporal reach of the statute, and here there's no, you know, such as a provision specifying the statute shall only be applied prospectively or a provision indicating that the statute may have retroactive effect, where there's no such indication, this Court looks to Section 4 of the Statute on Statutes. And Section 4 of the Statute on Statutes creates a substantive versus procedural dichotomy. It says that where a statute affects substantive changes in substantive law, such as altering rights or obligations of parties and so forth, then the statute shall only apply prospectively. On the other hand, where the statute affects changes in procedural law, which as this Court recognized in People v. Atkins include things such as the law of pleading, of practice, and of evidence, where it meets, where it affects those procedural laws, it can be applied and it's presumed that the General Assembly's intent is that it be applied retroactively. Here Section 115-7.4 is clearly a law of evidence which falls under People v. Atkins' definition of procedural laws. And so in the absence of an express indication from the legislature as to the statute's temporal reach, it's assumed that the legislature intended for the statute to apply retroactively. The next question then is whether or not that's constitutional. And for that, both this Court and the United States Supreme Court have recognized four types of laws which cannot be applied retroactively or which a retroactive application of would violate the Ex Post Facto Clause. Those four types of laws are commonly referred to as the Calder v. Bull factors. The first three are clearly not implicated here, those being types of laws that make something a crime which previously wasn't, types of laws which increase the punishment for a crime greater than it previously was, or types of laws which aggravate a crime to something greater than it previously was. The fourth factor is similar to the first three, but it deals with rules that alter the quantum of evidence necessary to convict. So for example, in Carmel v. Texas, there was a law which, before the law was passed, certain sexual assault cases required the testimony of a victim plus some corroborating evidence. In the absence of corroborating evidence, the victim's testimony alone was insufficient. The Supreme Court referred to that as a sufficiency of the evidence rule. And the Court held that a subsequent change in that law which allowed for a conviction on only the testimony of a victim was the type of law that altered the quantum of evidence required to convict and which could not be applied retroactively. Of course, the classic case is Sir Fenwick's case, where the Parliament retroactively changed the law and allowed a conviction for treason which had previously only been permissible on the testimony of two witnesses, and here it said we're going to allow a conviction for treason on the testimony of only one witness. So those are the types of laws which lessen the amount of evidence or allow for a different type of evidence to convict where previously such evidence would have been insufficient. What we have here, 115-7.4, is not that type of rule of evidence. Instead, it's the type of evidence which Carmel v. Texas expressly distinguished. It's the type of rule of evidence which doesn't deal with the sufficiency of the admitted evidence, but rather with the category or class of evidence that is admissible. And the Court has never held, either the U.S. Supreme Court or this Court, has never held that that type of rule of evidence, concerned only with what types of evidence is admissible, the courts have never held that that type of rule cannot be applied retroactively under the Ex Post Facto Clause. So it seems fairly clear that 115-7.4 was intended to have retroactive effect and can have retroactive effect under the Constitution, so that even if were this Court to hold that defendants' prior domestic battery convictions were not admissible under Section 115-20, they would clearly be admissible at a retrial under 115-7.4. Now, the defendant argues that he should nevertheless get that new trial because he was not afforded the notice or the weighing required by 115-7.4. But the fact is 115-20 has those exact same provisions. Under 115-20, the people gave defendant pretrial notice of its intent to use his prior domestic battery conviction, and the Court then engaged in the very same weighing that would be required under 115-7.4 and found that the prior domestic battery conviction here, that the probative value of that conviction was not substantially outweighed by the danger of unfair prejudice. Now, the defendant challenged that finding in the appellate court, but he's not renewed that challenge here. And so were this case to go back to the trial court, it would essentially be there's really no purpose for that because we already know that under 115-7.4 these convictions would come in. In any event, however, as I mentioned, there are two other reasons to affirm the judgments below. And the first is that these convictions or this prior domestic battery conviction was admissible under Section 115-20. The defendant's contrary interpretation of the statute suffers from two fundamental flaws. The first is that it ignores these types of language, these types of offenses language in the statute. The defendant doesn't explain how his interpretation of the statute is any different without that language. Essentially, his interpretation of the statute is the same as it would be if the statute simply said listed five offenses and then said these offenses rather than these types of offenses. And in fact, earlier this morning, defendant's counsel seemed to concede that the statute is not limited solely to those offenses that are listed. He seemed to recognize that there could be certain instances where the General Assembly intended to allow leeway for the courts to determine whether or not a new crime or a crime not listed was of the same type as those listed to fall within the statute. Mr. Levin, does it matter that Subsection A refers to these types of offenses and Subsection B does not? No, Your Honor, I don't think it does. And the reason is that Subsection A is the part of the statute that lays out what types of offenses fall under the statute and at what types of prosecutions the statute applies. And it's that section that uses the broad language referring to these types of offenses. Subsection B then refers to Subsection A, but the import of that section is that that section lays out the effect or the purpose for which such evidence, when admitted, what effect it has at trial. So that's the section that says that these prior convictions are admissible for propensity purposes. And so the Subsection A being the statute that lays out the reach, the section that lays out the reach of the statute, and it being the section which includes the broad language, it makes sense when interpreting Subsection B to read it in light of Subsection A. Were the court to read it more restrictively, the broader language in Subsection A would essentially be superfluous and have no meaning, and the court has routinely recognized that one of the key rules of statutory interpretation is to make sure that every word and phrase in a statute is given independent meaning where possible. And it's the State's interpretation of the statute that gives that independent meaning to these types of offenses language, which the defendant's interpretation doesn't. In any event, even to the extent that the statute remains somewhat ambiguous, I think the purpose of the statute makes clear that a prior domestic battery conviction is admissible as propensity evidence at a future prosecution of the defendant for a domestic violence-related murder to the same extent that it would be admissible were the defendant on trial for an aggravated battery of that victim, which just simply didn't rise to the level of murder. The mere fortuity of whether or not the victim dies should have no impact on whether or not the statute applies. And certainly, especially in light of the broad language that the General Assembly used in the statute, there's no reason to think that they wouldn't have intended for it to apply equally to a murder arising out of domestic violence as it would to an aggravated battery arising out of domestic violence. And finally, even if the court were to find that the defendant's prior domestic battery conviction was not admissible as propensity evidence under either of the two statutes I've mentioned, that error was harmless. As we explain in the brief, the evidence of defendant's guilt here was overwhelming. In fact, he conceded that he killed Cassandra Frazier. His only argument in closing was simply that the jury should find him guilty of second-degree murder, because, as he argued, the victim was the initial aggressor, and he had acted out of a sudden intense passion resulting from her serious provocation. But the overwhelming evidence of the 18 stab wounds he inflicted on her, well after the time where reasonable passions could have cooled, the fact that he then pushed her down to the ground as she struggled for help, as she struggled to get help, rifled through her purse looking for money and then fled on foot, essentially leaving her to die alone, that evidence strongly rebutted his contention that he had acted solely based on her provocation. What's more, even if it was error to admit his prior domestic battery conviction for propensity purposes, there's little doubt that that conviction would have been admissible, as his prior act of arson was admissible for the limited purpose of proving his intent and of rebutting his argument that he had acted solely on the basis of passions. And so had that testimony been introduced for its limited purpose with a limiting instruction, that testimony in addition to the other evidence I've just mentioned, there's not a reasonable probability that the result of the trial would have been different. So if there are no further questions, we would ask the Court to affirm the judgments below. Thank you. Thank you, Mr. Levin. Mr. Burke, rebuttal. Thank you, Your Honor. I think bringing up the fact that the jury was informed about an earlier arson and talking about 7.4, those have something in common. He was not convicted of arson. That was told to the jury as bad acts. And they learned all about the details. He piled her clothes on the bed, he set fire to the bed, he was mad at her for this reason. The jury learned all about the facts of the arson because it was a bad act. Here, the page I cited earlier in the record, R134, the State's attorney says to the domestic battery, I think she got a black eye. The prosecutor didn't even know what the facts of the earlier case was. The jury certainly was not told of the facts of the earlier case. For this Court to say that we're going to declare that the evidence in this case is sufficient to impose a rule under 7.4, to do that, you have to look at the factual similarity between the domestic battery and the crime in this case. At this point in time, we don't know anything about the domestic battery, except when he was charged and when he was convicted, and that the prosecutor thinks that she may have received a black eye. I don't think under the facts of this case, the Court can impose a ruling under Rule 7.4 and to remand it with directions to the circuit court to do that, with no knowledge about the domestic battery. I think that's an advisory opinion. Are there any questions, Your Honors? Thank you. Thank you, Mr. Burke, Mr. Levin, for your arguments today. Case number 111896, People v. Chapman, is taken under advisement as agenda number four. Mr. Marshall, the Illinois Supreme Court stands adjourned until Wednesday, January 18, 2012, at 9 a.m.